UNITED STATES of America, Appellee,

v.

Carlos VASQUEZ-SANTIAGO and Elmer Colon, Appellants.

Nos. 720, 721, Dockets 78–1418, 78–1419.

United States Court of Appeals, Second Circuit.

Argued March 6, 1979.

Decided July 12, 1979.

Gary L. Schoer, Kew Gardens, N. Y., Salaway & Schreiber, Kew Gardens, N. Y., for appellants.

Thomas D. Sclafani, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty. for the Eastern District of New York, and Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before FRIENDLY, SMITH and MANSFIELD, Circuit Judges.

PER CURIAM:

This is yet another case involving warrantless "airport searches" aimed at apprehending narcotics couriers.[1] In this case, the search resulted in discovery of a substance which turned out to be heroin, and which was introduced as evidence against appellants, leading to their conviction of narcotics offenses in the United States District Court for the Eastern District of New York, Eugene H. Nickerson, *Judge.* We affirm the convictions.

Appellants Vasquez-Santiago and Colon were charged with conspiracy to possess heroin in violation of 21 U.S.C. § 846, and possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. Both pleaded not guilty and requested suppression of the heroin seized on the grounds that the seizure of that evidence stemmed from violations of defendants' fourth amendment rights. After a hearing, the motion to suppress was denied, and trial commenced as to both defendants. After a mistrial was declared, Vasquez-Santiago withdrew his plea of not guilty and submitted a guilty plea on the conspiracy count.[2] Colon was tried before a jury and convicted on both the conspiracy and substantive counts.

On this appeal, Vasquez-Santiago and Colon challenge their convictions on the ground that the trial court erred in denying the motion to suppress. Colon also objects to certain remarks of the prosecutor as prejudicial. Because we find the denial of the motion to suppress correct, and the prosecutor's remarks not reversible error, we affirm the convictions of both appellants.

As developed at the hearing on the motion to suppress, the circumstances of appellants' apprehension were as follows: On May 24, 1978, Drug Enforcement Administration Agent Gerard Whitmore was stationed at La Guardia Airport in New York as part of DEA's widespread effort to monitor passengers on flights from certain "source cities" to control illicit drug traffic. Agent Whitmore was working with DEA Agent Alfredo Iglesias, monitoring a flight from Chicago by observing the passengers as they left the airplane. After approximately 15 passengers had disembarked, Whitmore noticed Vasquez-Santiago, a casually dressed Hispanic individual, enter the lounge area of the airport from the plane.

---

**1.** *See, e.g., United States v. Price,* 599 F.2d 494 (2d Cir. 1979); *United States v. Rico,* 594 F.2d 320 (2d Cir. 1979); *United States v. Oates,* 560 F.2d 45 (2d Cir. 1977).

**2.** Vasquez-Santiago reserved his right to challenge the denial of his motion to suppress when he entered his plea of guilty, in accordance with the procedure allowed in cases such as *United States v. Coyne,* 587 F.2d 111, 115 (2d Cir. 1978). *See also United States v. Price, supra,* 599 F.2d at 496 n. 1; *United States v. Rico, supra,* 594 F.2d at 321 n. 1.

Vasquez-Santiago was looking around the gate area in a manner which the agent considered suspicious, and the agent decided to follow him. As he walked down a corridor to the baggage claim area, Vasquez-Santiago continued to glance around and to turn to look behind him.

Vasquez-Santiago then entered the baggage claim area and walked toward appellant Colon, who was standing near the baggage carousel. Agent Whitmore testified that he saw Colon give a hand signal indicating that Vasquez-Santiago should stop, after which the latter continued walking past Colon. Colon then scanned the other people in the baggage area, and nodded his head at Vasquez-Santiago. Vasquez-Santiago then approached Colon, and Colon slipped a small piece of paper which appeared to be a baggage claim check to Vasquez-Santiago.

As the luggage started to come out on the carousel, Vasquez-Santiago looked at Colon, Colon nodded, and Vasquez-Santiago took a blue suitcase off the ramp as he glanced at the paper which Colon had given him. Colon then nodded again and began to walk out of the terminal, holding a suit bag. Vasquez-Santiago followed with the blue suitcase. As he approached the exit, Colon, with Vasquez-Santiago still following him, slowed up and walked in a complete loop before going through the door. When the two were outside the terminal, they began conversing as they walked to and waited at a taxi stand.

Agent Whitmore then approached Vasquez-Santiago, and after determining that appellant spoke English, Whitmore asked him for identification and identified himself as a federal narcotics agent. Colon immediately moved away from Vasquez-Santiago in the taxi line. Vasquez-Santiago produced an airline ticket and a valid Puerto Rican driver's license. In response to questions from the agent, Vasquez-Santiago said that the blue suitcase he was carrying did not belong to him, but did contain some of his clothes. Whitmore then requested that Vasquez-Santiago accompany him inside the terminal adjacent to the taxi stand, and appellant agreed.

While Whitmore was questioning Vasquez-Santiago in the taxi line, his partner, Agent Iglesias, approached Colon to ask for identification and request him to go inside the terminal. All four then entered the terminal.

Whitmore identified himself to Colon and asked if Colon knew Vasquez-Santiago. Colon answered that he had never met Vasquez-Santiago prior to their conversation in the taxi line. Whitmore then asked if he could search Colon's suit bag, noting that a search warrant would be sought if he refused. Colon consented to the search of his bag. No contraband was found, and Colon was permitted to leave.

Next, Whitmore turned to Vasquez-Santiago and told him that the agents would like to search the blue suitcase. Despite the fact that all conversations up to this point had been in English, Vasquez-Santiago indicated that he did not speak English. Agent Iglesias acted as a translator and informed Vasquez-Santiago that if he did not give permission for the search of the suitcase, the agents would seek a search warrant. Vasquez-Santiago answered that he had no objections to their searching the suitcase. When the bag was opened, heroin was discovered.

Appellants challenge the initial stop, the inquiry by the agents, and the search of the suitcase as violative of their fourth amendment rights. Appellants claim that the DEA agents did not have probable cause or reasonable suspicion for stopping them initially, and that even if there were grounds for a minimal intrusion at first, the agents' inquiry exceeded the scope justified by the reasons for the initial stop. Additionally, appellants contend that there was no voluntary consent to the search of the luggage. Therefore, under either theory, the heroin discovered in the blue suitcase was the fruit of an illegal search, and should have been suppressed, appellants urge.

■ As has been noted countless times, the fourth amendment prohibits only searches and seizures which are not reason-

able. *See Delaware v. Prouse,* —— U.S. ——, ——, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979). Considering the circumstances of the initial stop of appellants by the agents and the inquiry which followed, we find that this "reasonableness" standard has been met. The "investigative stop" in this case, as with the border patrol stops on reasonable suspicion in *United States v. Brignoni-Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), "fell far short of the kind of intrusion associated with an arrest," *Dunaway v. New York,* —— U.S. ——, ——, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979), and therefore fits within the narrow exception developed in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to the general rule requiring probable cause. See generally *Dunaway v. New York, supra,* —— U.S. at ——, 99 S.Ct. 2248 at 2254–56.

 Under the guidelines of *Terry v. Ohio, supra,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 a law enforcement official may make an investigative stop of individuals acting in a suspicious manner if such a stop is based on "specific and articulable" facts, pointing to a reasonable possibility of involvement in narcotics trafficking. *United States v. Oates,* 570 F.2d 45, 59 (2d Cir. 1977). While individual actions may be consistent with innocence as easily as with guilt, the circumstances in which an investigatory stop is made should be evaluated as a whole. *United States v. Price,* 599 F.2d 494, 500 (2d Cir. 1979); *Oates supra,* 560 F.2d at 61, and cases cited therein.

 In this case, there were sufficient articulable facts to justify arousing Agent Whitmore's suspicions, and to allow him to make an initial investigatory stop. There is no claim here that the stop was merely the result of adherence to an official DEA "profile" of narcotics couriers. *See United States v. McCaleb,* 552 F.2d 717, 720 (6th Cir. 1977); *United States v. Westerbann-Martinez,* 435 F.Supp. 690, 698 (E.D.N.Y.

1977). Both appellants arrived on a flight from a known "source city" for narcotics. *See United States v. Price, supra,* 599 F.2d at 501 n. 9. Vasquez-Santiago appeared apprehensive upon disembarkment from the plane, and both he and Colon continued to glance around nervously while they waited for the baggage. *See United States v. Price, supra,* 599 F.2d at 499; *United States v. Rico,* 594 F.2d 320, 322 (2d Cir. 1979); *United States v. Oates, supra,* 560 F.2d at 51. Vasquez-Santiago and Colon signaled to each other surreptitiously, and then passed a piece of paper in a secretive manner. *See United States v. Magda,* 547 F.2d 756, 757 (2d Cir. 1976), *cert. denied,* 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977). After disembarking separately and appearing to be strangers, Colon and Vasquez-Santiago conversed in the taxi line and gestured to each other while getting the baggage, indicating that they were traveling together. *See Rico, supra,* 594 F.2d at 325–26. Taken as a whole, and given Agent Whitmore's experience in the area of monitoring airports for narcotics couriers,[3] these facts justify a finding that "the complex of conduct that [Whitmore] observed and described would have made an experienced and reasonably cautious law enforcement officer suspicious," and thus the initial stop was reasonable. *Rico, supra,* 594 F.2d at 326. The investigative stop here, as in our other airport search cases, *see Price, Rico,* and *Oates, supra,* appears to us more closely akin to the situations in *Terry* and the border patrol stops on reasonable suspicion approved in cases such as *United States v. Brignoni-Ponce, supra,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 than to the rounding up of the suspect in *Dunaway v. State of New York, supra.*

 Once the reasonableness of the stop is determined, a limited investigation was permissible. *Terry v. Ohio, supra,* 392 U.S. 1, 23, 88 S.Ct. 1868, 20 L.Ed.2d 889; *United States v. Oates, supra,* 560 F.2d at 58–59.

---

**3.** Agent Whitmore had experience monitoring passengers on domestic flights since 1976. He had been with the Drug Enforcement Administration since 1973, and he was with the U. S.

Customs Service for six years prior to that time. *See United States v. Price, supra,* 599 F.2d at 500.

In light of the serious nature of narcotics trafficking violations, the scope of the questioning and relatively brief detention of Colon and Vasquez-Santiago in the terminal was not an excessive intrusion on appellants' personal security. *See Delaware v. Prouse, supra,* at —— and n. 8., 99 S.Ct. 1391 at 1396, 59 L.Ed.2d 660.[4]

 Appellants also challenge the search of the blue suitcase carried by Vasquez-Santiago because, allegedly, no consent was given for the warrantless search.[5] While claims of consent given for a search by an individual in official custody should be scrutinized with care, *United States v. Wiener,* 534 F.2d 15, 17 (2d Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976), the fact of custody alone is not enough to demonstrate involuntariness of consent. *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 498 (1976). In this case, Vasquez-Santiago was not threatened, was in a public area of the terminal with the agents, and was informed that he had the option of refusing consent to the search pending the agents' obtaining a search warrant, unlike the situation in *United States v. Ruiz-Estrella,* 481 F.2d 723, 728 (2d Cir. 1973). Though Vasquez-Santiago indicated that he could not speak English before the consent was given, he had evidenced understanding of English previously, and he was asked to consent in Spanish by Agent Iglesias. In this case, then, the district court's finding that consent to the search was voluntarily given was not clearly erroneous. *See United States v. Price, supra,* 599 F.2d at 503–504.

 We find no merit in appellant Colon's contention that the reference by the prosecutor in his summation to his previous narcotics violation requires reversal.[6] The

charge had properly limited the use of the evidence. While improper, the reference by the prosecutor, to which no objection was made, was not so prejudicial as to require reversal in light of the other evidence tending to incriminate Colon. There was here no such parade of horribles as in *United States v. Gonzalez,* 488 F.2d 833 (2d Cir. 1973).

The convictions of both appellants are affirmed.

---

4. Under the fourth amendment standard of reasonableness

 the permissibility of a particular law-enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. —— U.S. at ——, 99 S.Ct. at 1396.

5. In light of our finding that consent to the search of the suitcase was voluntarily given by

Vasquez-Santiago, it is not necessary for us to decide whether under *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), appellant Colon would be barred from objecting to the search of the suitcase carried by Vasquez-Santiago.

6. The prosecutor, addressing the question of Colon's knowledge, remarked that Colon "is no stranger to being a conspirator with dealing in narcotics" and that "he was back at it again."