STATE v. POINDEXTER

[104 N.C. App. 260 (1991)]

---

STATE OF NORTH CAROLINA v. JAMES EDWARD POINDEXTER

No. 9026SC1117

(Filed 15 October 1991)

1. **Searches and Seizures § 12 (NCI3d) — airport encounter with police — defendant not seized — admissibility of evidence found in search**

   Defendant was not seized within the meaning of the Fourth Amendment during his initial encounter with police at an air-

port because conduct of the police would not have communicated to a reasonable person that such person was not free to decline the officers' requests or otherwise terminate the encounter where the evidence showed that officers approached defendant as he left the airport terminal after he arrived there on a flight from New York; a city narcotics officer identified himself as a police officer, showed defendant his police badge, and asked defendant if he could speak with him for a moment, to which defendant consented; the officer stood to the left of defendant and an SBI agent stood to the right of defendant; defendant then complied with the officer's request to see his airplane ticket; after looking at the ticket, the officer returned it to defendant; upon the officer's request to return to the terminal because of the cold weather, defendant agreed even though he had been informed that he was not in custody; once inside the officer asked defendant for additional identification, questioned him about his residence and asked him why he was leaving the terminal if he had a connecting flight in thirty minutes; the officer again advised defendant that he was not under arrest, informed defendant that he was looking for drugs being smuggled into the airport, again advised defendant that he was not under arrest, told defendant that the officers were just looking for his cooperation, and requested defendant's permission to search his person and handbag; in response to the officer's statement that the search could be conducted where they stood or in a nearby restroom, defendant stated that he would rather go to the restroom; and during the search, the SBI agent discovered a package containing cocaine on defendant's person. The narcotics officer's display of a badge in conjunction with both officers' other conduct during the initial encounter was not a sufficient show of authority to constitute a seizure or to make defendant's consent involuntary.

Am Jur 2d, Searches and Seizures §§ 46-48, 100.

Validity, under Federal Constitution, of consent to search—Supreme Court cases. 36 L. Ed. 2d 1143.

2. **Appeal and Error § 150 (NCI4th)— constitutional issue—absence of determination by trial court**

The Court of Appeals will not address the issue of whether race was unconstitutionally used as a factor in the drug courier

STATE v. POINDEXTER

[104 N.C. App. 260 (1991)]

profile where the trial court made no findings of fact or conclusions of law concerning race and the drug courier profile.

**Am Jur 2d, Appeal and Error § 635.**

APPEAL by defendant from Judgment entered 6 April 1990 by *Judge Kenneth A. Griffin* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 27 August 1991.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General William B. Ray, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Grady Jessup, for defendant appellant.*

COZORT, Judge.

Defendant James Edward Poindexter was arrested at Douglas Municipal Airport in Charlotte, North Carolina, on 17 December 1989, after police officers searched him and discovered cocaine. On 5 February 1990, defendant was charged with two counts of trafficking in drugs, one by felonious possession, and one by felonious transportation of 400 grams or more of cocaine. On 22 February 1990, defendant filed a motion to suppress all physical evidence and statements obtained, alleging an unlawful seizure and search in violation of his constitutional rights. The trial court denied the motion to suppress. Defendant gave notice of appeal and entered a guilty plea to trafficking in drugs by possession of more than 400 grams of cocaine. The State voluntarily dismissed the second count of trafficking by transporting more than 400 grams of cocaine. From a judgment imposing a sentence of thirty-five years in prison and a fine of $250,000.00, defendant appeals. We affirm.

Defendant raises two issues on appeal: (1) whether the trial court erred in denying defendant's motion to suppress physical evidence and statements on the grounds that he was unconstitutionally seized without an arrest warrant, probable cause, or his consent; and (2) whether the trial court erred by failing to determine whether the use of race was an impermissible factor in the drug courier profile.

At the suppression hearing the State presented evidence that on 17 December 1989, defendant deplaned from a New York flight at Douglas International Airport in Charlotte, North Carolina. Charlotte Narcotics Officer Jerry Sennett, State Bureau of Investiga-

STATE v. POINDEXTER

[104 N.C. App. 260 (1991)]

tion Agent Tony Ballas, and Charlotte Vice Officer B. B. Wallace were standing near the gate agent observing passengers as they deplaned. Defendant approached the gate agent in the middle of a group of passengers; however, he did not stop to ask for information from the gate agent. Upon stopping for a second and looking at Officer Sennett, defendant's eyes became wide and he had a nervous look. Defendant then immediately turned, quickly walked down the concourse toward the main terminal, went down an escalator, and started out an exit door. Officer Sennett approached the defendant, identified himself as a police officer, presented identification, and asked to speak with the defendant. Officer Sennett asked to see the defendant's ticket and returned it to him after noting that defendant came from New York, purchased his ticket with cash, had a connecting flight to Columbia, South Carolina, and had no checked baggage. Officer Sennett then asked defendant if he would like to step inside out of the cold. The defendant agreed.

Upon request, defendant presented to Officer Sennett his driver's license indicating a Pisgah Forest, North Carolina, address. The defendant began breathing heavily and became visibly nervous. Defendant first told the officer that he lived in New York City and had lived in Columbia, South Carolina, for several months. He explained that he was going to his car in the parking lot to get some belongings before his next flight. Officer Sennett informed the defendant twice that he was not under arrest or in custody. After asking for the defendant's cooperation, Officer Sennett asked the defendant if he would consent to a search of his person and luggage for drugs. In response to Officer Sennett's statement that the search could be conducted where they stood or in a nearby restroom, the defendant stated that he would rather go to the restroom. During the search, Agent Ballas discovered a large object wrapped in gray duct tape in defendant's pants. Defendant was then placed under arrest, advised of his Miranda rights, signed an Adult Waiver of Rights Form, and gave a statement about twenty minutes later. For the purposes of the hearing, it was stipulated that the package contained 425.1 grams of cocaine.

The defendant testified that he was walking out the door from the airport when someone grabbed him by the arm and showed him a badge. The officer told him he was not under arrest, but the officers had him boxed in. He felt like he was arrested and could not leave if he wanted to.

The defendant argues: (1) that he was seized within the meaning of the Fourth Amendment during the initial encounter when the officers approached him, identified themselves as police officers, showed him their badges, requested and took possession of his airline ticket, and requested that he return to the terminal; (2) that the officers did not have a reasonable articulable suspicion based upon the drug courier profile or other facts known to them to justify the seizure; and (3) that race was unconstitutionally used as a factor in the drug courier profile.

[1]   We must first determine whether the defendant was seized within the meaning of the Fourth Amendment. In *Florida v. Royer*, 460 U.S. 491, 75 L.Ed.2d 229 (1983), the United States Supreme Court stated:

> [T]he State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.

*Id.* at 497-98, 75 L.Ed.2d at 236 (citations omitted).

More recently, in *Florida v. Bostick*, --- U.S. ---, 115 L.Ed.2d 389 (1991) [59 U.S.L.W. 4708, 4710 (18 June, 1991)], the United States Supreme Court summarized recent rulings dealing with airport encounters as providing that "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage — as long as the police do not convey a message that compliance with their requests is required." (Citations omitted.) In determining

STATE v. POINDEXTER

[104 N.C. App. 260 (1991)]

"whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at ---, 115 L.Ed.2d at --- [59 U.S.L.W. at 4711].

In *State v. Thomas*, 81 N.C. App. 200, 343 S.E.2d 588, *cert. denied*, 318 N.C. 287, 347 S.E.2d 469 (1986), we reviewed numerous state and federal cases involving the drug courier profile and Fourth Amendment issues, concluding that:

The analysis which has emerged from these decisions can be summarized as follows:

"1. Communications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment;

2. Brief seizures must be supported by reasonable suspicion; and

3. Full-scale arrests must be supported by probable cause."

*Id.* at 205, 343 S.E.2d at 591 (citing *State v. Perkerol*, 77 N.C. App. 292, 298, 335 S.E.2d 60, 64 (1985) ).

*State v. Grimmett*, 54 N.C. App. 494, 284 S.E.2d 144 (1981), *cert. denied and appeal dismissed*, 305 N.C. 304, 290 S.E.2d 706 (1982), provides a good example of our analysis in airport detention cases. In *Grimmett*, officers observed the defendant and his companion in the vicinity of the baggage claim pickup in the Charlotte Airport. Relying upon the drug courier profile, an officer approached the defendant, identified himself as an officer, stated the purpose of his approach, asked if the defendant would speak to him, and asked for some identification. Defendant agreed to speak to the officer and to accompany him back inside the terminal. Once inside, the officer took the defendant to a hallway outside the crowded airport police office. In the hallway, Grimmett opened a suitcase taken by another officer from Grimmett's companion. Grimmett then gave the officers permission to search the suitcase. Upon discovery of a controlled substance, Grimmett was arrested. *Id.* at 496, 284 S.E.2d at 147.

Citing language from *Terry v. Ohio*, 392 U.S. 1, 20 n.16, 20 L.Ed.2d 889, 905 n.16 (1968), that "not all personal intercourse be-

tween policemen and citizens involves 'seizures' of persons," we agreed with the trial court that the defendant had not been seized during the initial encounter. Our analysis continued, however, since the defendant asserted that he had been seized when he was escorted from the public area to the office. Agreeing with the defendant that the officers did not have the requisite reasonable articulable suspicion to justify the further detention, we nevertheless affirmed the denial of defendant's motion to suppress the evidence on the basis that the defendant voluntarily consented to accompany the officers to the hallway.

The case at bar is factually quite similar to *State v. Grimmett.* Our analysis here, however, is limited to determining whether the initial encounter constituted a seizure because the defendant failed to argue that the events after the initial encounter constituted an unlawful seizure.

The trial court found the following facts. Officer Sennett approached the defendant as he exited the terminal, showed his police identification, identified himself as a police officer, and asked defendant if he could speak with him for a moment, to which the defendant consented. Officer Sennett stood to the left of the defendant and Agent Ballas stood to the right of the defendant. Officer Sennett then asked to see the defendant's airplane ticket. The defendant complied with the request. After looking at the ticket, Officer Sennett returned it to the defendant. Upon Officer Sennett's request to return to the terminal because of the cold weather, the defendant agreed, even though he had been informed that he was not in custody. Once inside, Officer Sennett asked the defendant for additional identification, questioned him about his residence, and asked him why he was leaving the terminal if he had a connecting flight in thirty minutes. Officer Sennett again advised the defendant that he was not under arrest, informed him that he was looking for drugs being smuggled into the airport, again advised him he was not under arrest, told him they were just looking for his cooperation, and finally requested permission to search his person and handbag. These findings of fact are supported by the testimony of Officer Sennett. If supported by competent evidence, the underlying findings of fact are conclusive and binding on appeal. *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). The findings of fact in turn support the trial court's conclusion of law that there was no violation of the defendant's federal or state constitutional rights.

Reviewing all the circumstances surrounding the initial encounter, we find that the police conduct would not have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. The officers approached the defendant, identified themselves, and asked if they could speak to him and see his airline ticket. The defendant consented. The officers then asked the defendant if he would like to step inside for the purpose of questioning since it was a cold day. The defendant agreed even though he had been told he was not in custody. There is no evidence that the officers threatened or coerced the defendant to accompany them inside. The defendant testified that the officers did not show him their weapons during the entire encounter. In fact, the defendant testified that he accompanied the officers into the terminal because the officers showed him their badges. Once outside, the officers twice informed the defendant that he was not under arrest, asked for his cooperation, and then asked for permission to conduct a search.

In *Florida v. Royer*, 460 U.S. at 498, 75 L.Ed.2d at 236, the United States Supreme Court specifically stated that the fact that an officer identifies himself is not sufficient by itself to transform a lawful stop into a seizure requiring some level of particularized suspicion. Here, the trial court found that "Officer Sennett approached the Defendant and since he was dressed in casual clothes, he showed him his police identification, [and] identified himself as a police officer." The officer showed the defendant his badge as a means of identification. We find that the display of the badge in conjunction with the officers' other conduct during the initial encounter was not a sufficient show of authority to constitute a seizure or to make the defendant's consent involuntary. The trial court correctly denied the motion to suppress.

[2] Defendant also assigns as error the trial court's failure to determine whether race was being impermissibly employed as a factor in utilizing the drug courier profile. We will not address this issue since it does not affirmatively appear that " 'such question was raised *and passed upon* in the court below,' " *State v. Dorsett*, 272 N.C. 227, 229, 158 S.E.2d 15, 17 (1967) (quoting *State v. Jones*, 242 N.C. 563, 564, 89 S.E.2d 129, 130 (1955) ) (emphasis added by the Court in *Dorsett*), as the trial court made no findings of fact or conclusions of law concerning race and the drug courier profile.

PARRISH FUNERAL HOME v. PITTMAN

[104 N.C. App. 268 (1991)]

The judgment below is

Affirmed.

Judges ORR and LEWIS concur.