STATE OF NORTH CAROLINA v. RICHARD GEORGE JOHNSTON

No. 9326SC967

(Filed 2 August 1994)

**Searches and Seizures § 44 (NCI4th)— defendant avoiding driver's license check—officer's questioning of defendant—constitutionally permissible seizure**

Because an officer may approach a person in a public place and ask questions without violating that person's constitutional rights, an officer's encounter with defendant was a constitutionally permissible seizure and the trial court did not err in denying defendant's motion to suppress evidence from that confrontation where the evidence tended to show that defendant turned into a parking lot 200 yards before a license check point and did not get out of his car; the officer approached defendant, asked why he had pulled into the lot, and asked to see defendant's driver's license; defendant could produce no license; the officer conducted a field sobriety test based on the odor of alcohol about defendant; defendant failed the test; and it was only at that point that the officer placed defendant under arrest.

**Am Jur 2d, Searches and Seizures §§ 64, 69, 70.**

**Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.**

**Search and seizure: "furtive" movement or gesture as justifying police search. 45 ALR3d 581.**

Appeal by defendant from judgment signed 20 May 1993 by Judge Forrest A. Ferrell in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 June 1994.

Defendant was convicted of impaired driving, G.S. 20-138.1, and was sentenced to four months imprisonment. From judgment entered, defendant appeals.

On 31 May 1992, North Carolina State Trooper T. L. Ashby conducted a license check at the intersection of Canterwood and Tom Hunter Road. At approximately 4:50 p.m., Trooper Ashby observed defendant's car turn off of Canterwood into the parking lot of an apartment complex. The entrance to the parking lot was approximately 200 yards from the intersection where Trooper Ashby was checking licenses. He observed that defendant remained seated in the parked car for approximately four to five minutes. When asked on direct examination what alerted his attention to defendant's car, Trooper Ashby testified that "[t]he fact that the vehicle pulled off the roadway into the apartment complex, which [sic] you could clearly see the vehicle, and the fact that no one exited that vehicle led me to believe—well, it was uncommon that someone would pull up, just [sic], and turn off just prior to the license check and no one exit the vehicle." Trooper Ashby drove over to defendant's car. As Trooper Ashby got out of his patrol car, defendant stepped out of his (defendant's) car. Trooper Ashby noticed that defendant was "unsteady on his feet." Trooper Ashby walked over to defendant and asked him why he turned off of the road prior to the license check. Defendant responded that he lived at the apartment complex. (This information was later verified as true by Trooper Ashby.)

Trooper Ashby testified that "[a]s we stood there and spoke, I noted a strong odor of alcoholic beverage about his breath . . . . It was basically just light, pleasant conversation at that point. I asked to see his drivers license and informed him as to why I had approached him." Defendant was unable to produce a drivers license. Trooper Ashby testified, "[a]fter I detected the odor of alcohol and no I.D. I simply asked him to step back to my vehicle, so I could verify drivers license information and check further as far as intoxication." Trooper Ashby gave defendant a field sobriety test. First, defendant was unable to recite the alphabet correctly. Trooper Ashby testified that he then gave defendant "a sway test, at which point you ask the person to place both feet together, put their arms freely to the side and put their head back and close their eyes, at which point Mr. Johnston [defendant] swayed pretty much. It was very noticeable." Defendant was then placed under arrest for impaired driving, G.S. 20-138.1, and was advised of his rights. Defendant was taken to the "In-take Cen-

**STATE v. JOHNSTON**

[115 N.C. App. 711 (1994)]

ter." Defendant declined to answer any questions. A breathalyzer test was given to defendant and the result of the test was .13.

A jury trial was held on 19 May 1993. The trial court denied defendant's motion to suppress evidence, G.S. 15A-974, and motion to dismiss at the close of all evidence. The jury found defendant guilty of impaired driving, G.S. 20-138.1.

> *Attorney General Michael F. Easley, by Associate Attorney General Robert T. Hargett, for the State.*

> *Public Defender Isabel Scott Day, by Assistant Public Defender Alicia Delaney Brooks and Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

EAGLES, Judge.

Defendant brings forward one assignment of error. Assignments of error 2 and 3 are not brought forward on appeal and are deemed abandoned. N.C.R. App. P. Rule 28(b)(5).

Defendant contends that the trial court erred by denying his motion to suppress evidence pursuant to G.S. 15A-974. After careful review, we find no error.

In order to determine "whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick,* —— U.S. ——, 115 L.Ed.2d 389, 401-02 (1991). *See State v. Poindexter,* 104 N.C. App. 260, 265, 409 S.E.2d 614, 616 (1991), *disc. review denied,* 330 N.C. 616, 412 S.E.2d 93 (1992). The scope of appellate review of a ruling upon a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of the witnesses) and to weigh and resolve any conflicts in the evidence. *Id.; State v. Smith,* 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied,* 403 U.S. 934, 29 L.Ed.2d 715 (1971). We note that the

record on appeal contains no findings of fact or conclusions of law by the trial court regarding the denial of defendant's motion to suppress. We further note that nothing in the record indicates that defendant objected at trial to the trial court's failure to make findings or conclusions and that defendant has not assigned error to the absence of such findings or conclusions. No material conflict in the evidence exists here. "Where there is no material conflict in the evidence, findings and conclusions are not necessary even though the better practice is to find facts." *State v. Edwards and State v. Jones*, 85 N.C. App. 145, 148, 354 S.E.2d 344, 347, *disc. review denied*, 320 N.C. 172, 358 S.E.2d 58 (1987) (citation omitted).

It is well established that

> law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.

*Florida v. Royer*, 460 U.S. 491, 497-98, 75 L.Ed.2d 229, 236 (1983) (citations omitted). *See also State v. Farmer*, 333 N.C. 172, 186, 424 S.E.2d 120, 128-29 (1993).

Here, the evidence shows that after defendant got out of his car and appeared unsteady, Trooper Ashby asked defendant why he turned off of the road prior to the license check and for his drivers license. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, — U.S. —, 115 L.Ed.2d at 398. At this point, there was no evidence of coercion or detention. " 'Communications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment.' " *State v. Thomas*, 81 N.C. App. 200, 205, 343 S.E.2d 588, 591, *disc. review denied*, 318 N.C. 287, 347 S.E.2d 469 (1986) (citation omitted).

Defendant voluntarily answered Trooper Ashby's question by responding that he could not produce his license. "[A drivers] license shall be carried by the licensee at all times while engaged in the operation of a motor vehicle." G.S. 20-7(n). *See* G.S. 20-7(a). Failure to

carry one's license at all times while engaged in the operation of a motor vehicle is a misdemeanor. G.S. 20-35. *See also* G.S. 20-29. Accordingly, Trooper Ashby had sufficient probable cause at that time to place defendant under arrest. *State v. Hudson,* 103 N.C. App. 708, 716, 407 S.E.2d 583, 587 (1991), *disc. review denied,* 330 N.C. 615, 412 S.E.2d 91 (1992); *see also U.S. v. Dixon,* 729 F. Supp. 1113, 1116 (W.D.N.C. 1990).

While Trooper Ashby could have placed defendant under arrest at this time, he merely chose to ask defendant to step back to the patrol car so that he could check defendant's license information and so that he could further investigate defendant's intoxication based upon defendant's unsteady movements and the smell of alcohol noticed during the course of the conversation. Only after defendant failed the field sobriety tests was he placed under arrest and advised of his rights. We conclude that the seizure was constitutionally permissible and that the trial court's decision to deny defendant's motion to suppress was supported by the evidence. *See State v. Badgett,* 82 N.C. App. 270, 346 S.E.2d 281 (1986).

For the reasons stated, we find no error.

No error.

Judges COZORT and LEWIS concur.