STATE OF NORTH CAROLINA v. EUSTER CLAY RAINES

No. 7610SC151

(Filed 21 July 1976)

1. **Criminal Law § 75— incriminating statements — officer's admonition to tell the truth**

   On officer's statement to defendant that "it would be better for him to tell the truth" was not an inducement or promise or reward which rendered defendant's subsequent incriminating statements inadmissible in evidence.

2. **Criminal Law § 75— request for attorney — subsequent waiver of attorney — admissibility of confession**

   Defendant's incriminating statements were not inadmissible because he initially indicated he wanted an attorney where officers terminated all questioning of defendant when he stated that he wanted

an attorney, defendant was allowed to talk with his mother and sister and was informed that robbery victims had identified him, defendant then told officers he wanted to make a statement, defendant was informed of his constitutional rights and signed a written waiver of those rights, and defendant then made the incriminating statements to officers.

APPEAL by defendant from *Bailey, Judge.* Judgment entered 26 November 1975 in Superior Court, WAKE County. Heard in the Court of Appeals 26 May 1976.

The defendant, Euster Clay Raines, was charged in separate indictments, proper in form, with the armed robbery of Constant L. Horton on 24 September 1975, the armed robbery of Richard Sampson on 8 June 1975, and the armed robbery of Latha Whittington on 14 June 1975. Prior to trial, pursuant to G.S. 15A-975, defendant moved to suppress certain incriminating statements made by him to the police. He also moved to dismiss the charges against him, pursuant to G.S. 15A-954, alleging that "[t]he defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution."

Defendant's motions came on for a hearing before Judge Bailey on 25 November 1975, after which he made findings and conclusions and entered an order allowing defendant's motion to suppress in part but denying defendant's motion to dismiss. On 2 December 1975 the defendant appeared for trial and entered pleas of "no contest" to the three armed robbery charges. Defendant's pleas were accepted by the court. The three charges were consolidated for judgment. From judgment entered that he be imprisoned for twenty-five to thirty years, defendant appealed.

*Attorney General Edmisten by Associate Attorney Richard L. Griffin for the State.*

*Manning, Fulton & Skinner by Howard E. Manning, Jr., for defendant appellant.*

HEDRICK, Judge.

The defendant assigns as error that portion of the order denying his motion to suppress.

The material facts of this case offered into evidence at the hearing on defendant's motions are not in dispute. Constant Horton was accompanying two police officers, who were driving on the streets of Raleigh on 24 September 1975, when he made an on-the-street identification of defendant as being the person who had robbed him. The defendant was arrested and taken to the investigative division of the police department. He was interviewed by Detective G. S. Black who fully advised him of his rights. The defendant stated that he desired an attorney, whereupon the interview was terminated and the defendant was taken to the Wake County Magistrate's Office and booked.

The defendant's mother and his sister met Detective Black and the defendant at the Magistrate's office, and defendant's mother requested that she be allowed to talk with the defendant. She went with defendant into a room adjacent to the "booking room." Approximately ten minutes later, she came to the door and asked what her son was charged with. Detective Black explained the charges to her and she advised her son to tell the truth. Black also "advised him at that time that it would be better for him to tell the truth." Black then left them alone again.

While defendant's mother continued talking with defendant, two people who had been robbed in the "Church's Chicken robbery" were shown a picture lineup. Each made a positive identification of defendant as the perpetrator. Detective Black re-entered the room where the defendant and his mother were talking and informed them that he had been identified by the victims of the robbery. He asked the defendant "if he wished to talk" and defendant responded "that he would like a minute to think about it."

The defendant's sister was allowed to talk with defendant. Five or ten minutes later, the defendant informed Detective Black that he wished to make a statement. The defendant was taken, alone, to the Sheriff's Department and interviewed. He was advised of his rights and signed a written waiver in the presence of Detectives Black and Jones. Defendant indicated that he understood his rights. He appeared to be normal in all respects. There were no threats or promises made, and he agreed to talk without a lawyer present. He then proceeded to make a statement which was written down by Black and Jones and signed by the defendant. The interview was completed at 5:12 p.m.

Later that evening Detective Jones talked with defendant's sister at her home. He told her "that him [the defendant] being truthful with us [the police] could possibly help him in court." Subsequent to the twenty-fourth, the defendant's sister talked with the defendant; and subsequent to the twenty-fourth, defendant had several more conversations with the police where he made incriminating statements.

On these facts, Judge Bailey concluded that there was no violation of defendant's constitutional rights prior to 5:12 p.m. on 24 September 1975. He also concluded, however, that the statement by Detective Jones to defendant's sister was "improper"—that it "was such as the officer knew or should have known would be communicated to Raines by his relatives." Based on this conclusion, he entered an order that any statements prior to 5:12 p.m., 24 September, were admissible into evidence but that all subsequent statements by the defendant were inadmissible.

Defendant contends on appeal that the facts offered into evidence at the hearing demonstrate that he was denied the right to counsel in violation of his Sixth Amendment rights and that he was "illegally compelled, through inducement and a suggestion of hope, to make incriminating statements," in violation of his Fifth Amendment rights. Since statements made subsequent to 24 September were suppressed, we consider defendant's contentions only as they apply to the statement made on 24 September.

[1] With regard to defendant's claim that he was denied his Fifth Amendment right to remain silent, he argues that Detective Black's statement to the defendant that "it would be better for him to tell the truth" was an inducement or a promise of reward which compelled him to make the incriminating statement. If a statement is "obtained by the slightest emotions of hope or fear," it should be rejected. *State v. Roberts,* 12 N.C. 259, 260 (1827). Thus, where defendant was told it would be "better for him in court" *(State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968)), or "to make an honest confession. It might be easier for you . . . " *(State v. Drake,* 113 N.C. 625, 18 S.E. 166 (1893)), or "it would be lighter on [him]" *(State v. Livingston,* 202 N.C. 809, 164 S.E. 337 (1932)), the subsequent confession has been excluded, because, in each instance, the defendant was offered hope, reward, or inducement that he

would benefit from the police or the court by telling the truth. Nothing in those cases, however, proscribes general "custodial admonitions to an accused by police officers to tell the truth." *State v. Pruitt,* 286 N.C. 442, 458, 212 S.E. 2d 92, 102 (1975). In *State v. Thompson,* 227 N.C. 19, 40 S.E. 2d 620 (1946) (cited with approval in *Pruitt, supra),* the officers told defendant, "it would be better to go on and tell us the truth than try to lie about it." The admission of the confession in that case was upheld.

We believe that the language in the instant case falls within the language of *Thompson.* The circumstances which existed when the statement was made in no sense were coercive. Defendant was with his mother; he was not even being questioned by police at the time. Black's statement was nothing more than a general custodial admonition to tell the truth. The trial court correctly concluded there was no Fifth Amendment violation in regard to the 24 September statement.

[2]   With regard to defendant's claim that the procedure above violated his Sixth Amendment right to counsel, the U. S. Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), said the following:

> "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to the police, they must respect his decision to remain silent."

Defendant contends that *Miranda* prescribes a blanket prohibition against further communication by the police with the defendant, until the defendant has consulted with an attorney.

In the present case, when defendant indicated he wanted an attorney, the police respected his request and promptly terminated all questioning. It was on the defendant's own initiative that Detective Black talked with the defendant again. Before talking with defendant, Black read and explained to him his rights under the Constitution, including his right to have an attorney present. Defendant waived those rights, signing the written waiver presented to him by Black.

The presence of counsel in an in-custody police interrogation is designed to insure "that statements made in the government-established atmosphere are not the product of compulsion," *Miranda, supra.* This insurance was never meant to be absolute, however, in proscribing the use of confessions *per se.* *Miranda* requires that the police respect the Constitutional rights of the defendant in obtaining custodial statements from the defendant. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently," *Miranda, supra.* We can find nothing in *Miranda,* and have been cited to no subsequent case by defendant, which implies that once defendant has indicated he wishes to exercise his right to an attorney he may not voluntarily make a subsequent informed and intelligent waiver of that right. *See Michigan v. Mosley,* 46 L.Ed. 2d 313 (1975) (Subsequent interrogation and resulting confession were upheld after defendant initially asserted his Fifth Amendment right to remain silent.).

"[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigation activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." *Mosley, id.,* at 46 L.Ed. 2d 320.

We conclude that the defendant in this case did voluntarily, knowingly and intelligently waive his rights to counsel on 24 September before making the statement which he sought to have suppressed. The trial court's denial of defendant's motion to suppress the 24 September statement is affirmed.

The judgment appealed from is affirmed.

Affirmed.

Judges PARKER and ARNOLD concur.