STATE OF NORTH CAROLINA v. ROBERT ERSKINE THOMAS

No. 7726SC552

(Filed 7 December 1977)

**1. Criminal Law § 76.4— confession—voir dire—evidence rules relaxed**

In a hearing before a judge on a preliminary motion, the ordinary rules as to the competency of evidence applied in a trial before a jury are to some extent relaxed, for the reason that the judge with knowledge of the law is able to eliminate from the testimony he hears that which is immaterial and incompetent and to consider only that which tends properly to prove the facts to be found; however, a judge's findings of fact will be reversed where it affirmatively appears that they are based in whole or in part upon incompetent evidence.

**2. Criminal Law § 76.7— confession—voir dire—hearsay testimony—findings based on competent testimony**

Defendant's contention that the trial court erred in admitting hearsay statements into evidence during the voir dire hearing on admissibility of defendant's statement to officers and in basing its order in part on such incompetent evidence is without merit, since defendant's own testimony on voir dire was competent and sufficient evidence, unaided by the hearsay in question, to sustain the court's findings of fact and conclusions of law.

State v. Thomas

3. **Criminal Law § 76.1— voir dire—judge's extensive participation—no error**

A trial judge's extensive participation in a voir dire hearing produces no judicial error provided the questions propounded are pertinent and necessary to the inquiry at hand.

4. **Indictment and Warrant § 6.2— arrest warrant—probable cause—sufficiency of evidence**

Evidence was sufficient to support the trial court's conclusion of law that, after talking with defendant, an officer had probable cause to obtain a warrant for defendant's arrest on charges of breaking and entering where such evidence, excluding accounts by two neighbors which defendant contended were unreliable, tended to show that defendant knew the victim; he admitted being in the area of the victim's residence at the time of the break-in; defendant called his girl friend the morning after the crime and asked if police were looking for him; and an automobile registered to defendant was seen "suspiciously" circling the area of the break-in.

5. **Criminal Law § 75.2— statements by officer to defendant—confession not induced by hope of leniency**

Defendant's contention that the trial court erred in denying the motion to suppress his confession for the reason that such confession was induced by a suggestion of hope from the investigating officer is without merit where the evidence tended to show that defendant initiated the conversation with the officer; defendant indicated that he wanted a "deal" but the officer responded that he could make no deal; defendant indicated a willingness to testify about the break-in in court; the officer then stated that "the Court will give some consideration to people if they testify or turn State's evidence, but there is no way I can tell you what a judge is going to give you"; and defendant then confessed.

6. **Criminal Law § 75.10— confession—crime of which defendant is unaware—waiver of privilege against self-incrimination unaffected**

The fact that a statement contains evidence inculpating defendant in an offense of which he is unaware in no way invalidates a prior, voluntary waiver of the privilege against self-incrimination.

APPEAL by defendant from *Howell, Judge*. Judgment entered 9 February 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 26 October 1977.

Defendant was charged in a warrant with feloniously breaking and entering the residence of Julia Fincher Haskin with intent to commit larceny on 7 October 1976. An indictment charging the same was returned against defendant on 8 November 1976. Subsequently, on 17 January 1977, an indictment was returned against defendant charging him with second degree burglary of the Haskin residence.

On 4 February 1977, defendant filed a motion to suppress evidence of a statement made by him relating to the offense charged. A *voir dire* hearing was conducted by the trial court on 7 February to determine the admissibility of defendant's statement.

The State's evidence on *voir dire* tended to show the following:

On the evening of 7 October 1976, Karen Futchell, a neighbor of Julia Haskin, observed a 1966 or 1967 off-white Chevrolet automobile in the vicinity of the Haskin's residence. The car disappeared, but later returned stopping at an intersection where a tall, thin man got out and walked up the Haskin's driveway. The car again drove off and when it returned, a man walked down from the Haskin's driveway, talked to the driver momentarily and then proceeded back up the driveway. Shortly thereafter, a man emerged from the front of the Haskin's house and disappeared down a deadend street. Mrs. Futchell awoke her husband and they went outside where they met another neighbor, Dennis Price. They could see a man standing at the end of the street and decided to call and inform Mr. and Mrs. Haskin of the incident.

About the same time that the Futchells were aroused by these occurrences, R. B. Collins—another neighbor—became suspicious of a white Chevelle which he observed cruising around the neighborhood. He got into his automobile and followed the Chevelle, obtaining its license plate number. Collins then gave the license plate number to Officer John Maness of the Matthews Police Department who radioed in the tag number and learned that the car was registered to defendant. As Officer Maness was traveling towards the Haskin neighborhood to investigate the car, he received a report of the break-in at the Haskin residence and proceeded directly to the house. At the scene, Officer Maness received the heretofore mentioned information from the Futchells and Mr. Price.

Officer Broadus Crabtree of the Matthews Police Department reported for duty at 12:00 midnight on 8 October 1976 and relieved Officer Maness at the Haskin residence. After Officer Maness related the information he had obtained, Officer Crabtree went to a local business and talked with Vickie Parker who told him that Robby Thomas (defendant) could usually be found with

Horace Bass. He related this information to the Mecklenburg County Police Department who then obtained Bass's address. Upon completing his investigation at the Haskin residence, Officer Crabtree went to see Ms. Robbie Johnson, a person with whom defendant supposedly lived. She told Crabtree that defendant had just called and asked if the police had been there looking for him.

At 6:30 a.m. on 8 October 1976, Detective R. M. Crowell of the Mecklenburg County Police Department was called in to assist in the investigation of the subject break-in. After reviewing the information gathered by Officers Maness and Crabtree, Detective Crowell proceeded to question defendant who had been taken into custody earlier that morning under an outstanding warrant for assault on a female. Defendant told Crowell that he had been driving his car in the Haskin neighborhood, looking for a girl he used to date. Defendant stated that he knew the Haskins, but denied any knowledge of the break-in. Upon this information, Crowell obtained a warrant against defendant for felonious breaking and entering.

At 6:30 p.m. on the same day, Crowell was advised that defendant wanted to talk with him. Defendant told Crowell he wanted to make a deal. After stating that he could not offer any kind of deal, Crowell informed defendant that the court generally would give some consideration to persons who testified. At this point, defendant admitted that he participated in the break-in. Crowell then advised defendant of his constitutional rights and procured defendant's signature on a waiver of rights form. A written statement was subsequently executed.

Defendant's evidence at *voir dire* tended to show that he had a conversation with Detective R. M. Crowell during which Crowell informed defendant that his car had been seen in the vicinity of the Haskin residence and a person resembling defendant had been seen coming out of the house. At a subsequent conversation with Crowell, defendant indicated he wanted to make a deal. Crowell responded that he could offer no deals, but that judges would generally take into consideration the extent of a person's cooperation.

Defendant stated that he would never have made any statement if (1) he had not been arrested; (2) Crowell had not told him

his car had been seen; and if (3) he had known he would be subject to prosecution for *burglary*.

Upon denial of his motion to suppress, defendant entered a plea of guilty as charged pursuant to G.S. 15A-979(c), thereby preserving his right to appeal the trial court's ruling. From a sentence of twenty (20) years imprisonment, defendant appealed to this Court.

*Attorney General Edmisten, by Associate Attorney Thomas H. Davis, Jr., for the State.*

*Hicks and Harris, by Tate K. Sterrett, for the defendant.*

MARTIN, Judge.

In the record on appeal defendant lists 27 assignments of error. Of these he brings forward 25, correlating them within 11 contentions. Upon review of the record and briefs, we have concluded that the assignments grouped under contentions 3, 4, 5, 6, 7 and 8 are without merit. We now consider seriatim contentions 1, 2, 9, 10 and 11.

In his first contention, defendant argues that the trial court erred in admitting hearsay statements into evidence during the *voir dire* hearing and in basing its order in part on such incompetent evidence. Specifically, defendant asserts that the findings of fact relative to the matter of to whom the suspicious 1966 Chevelle automobile was registered and to the out of court statements of Vickie Parker and Robbie Johnson, and the conclusion of law thereon, were based on incompetent testimony.

[1, 2] It is a well established rule that in a hearing before the judge on a preliminary motion, the ordinary rules as to the competency of evidence applied in a trial before a jury are to some extent relaxed, for the reason that the judge with knowledge of the law is able to eliminate from the testimony he hears that which is immaterial and incompetent, and consider only that which tends properly to prove the facts to be found. *Cameron v. Cameron*, 232 N.C. 686, 61 S.E. 2d 913 (1950). However, our Supreme Court has also emphasized that a judge's findings of fact will be reversed where it affirmatively appears they are based in whole or in part upon incompetent evidence. *State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976). Guided by these rules, we find in

the instant case that defendant's testimony that he owned the automobile in question and did in fact call Robbie Johnson on 7 October 1976 in the early morning was competent and sufficient evidence, unaided by the hearsay relative thereto, to sustain the subject findings of fact and conclusion of law. Defendant's contention No. 1 is overruled.

Defendant next contends that the trial court's extensive questioning of witnesses at the *voir dire* was error in that it went beyond the purpose of obtaining clarification and understanding of the testimony and in effect, assumed the role of the prosecution. We find no merit in this contention.

[3] We recognize the general rule regarding the questioning of witnesses *in the presence of the jury* that while a trial judge is permitted to question witnesses for the purpose of clarifying and understanding their testimony, he may not engage in frequent interruptions or prolonged questioning. *State v. Steele*, 23 N.C. App. 524, 209 S.E. 2d 322 (1974). This rule is grounded on the belief that such persistence on the part of the trial judge conveys to the jury the "impression of judicial leaning" and thus, violates the duty of absolute impartiality imposed upon a trial judge by G.S. 1-180. *State v. Steele, supra.* However, in the instant case, the trial judge's questioning, concededly extensive, occurred in the absence of the jury. While this Court has neither the purpose nor the intent to encourage such practices among trial judges, we are of the opinion, and defendant has presented no persuasive authority to the contrary, that a trial judge's extensive participation in a *voir dire* hearing produces no judicial error provided the questions propounded are pertinent and necessary to the inquiry at hand. We are supported in this view by *State v. Segarra*, 26 N.C. App. 399, 216 S.E. 2d 399 (1975), a decision in which this Court underscored the distinction between the questioning of witnesses at a *voir dire* hearing and such questioning at a jury trial in holding that:

"Since the very purpose of [a voir dire] hearing is to enable the judge to determine [the question at hand] . . . , we think the trial judge is and should be at liberty to make such inquiries as he deems necessary to enable him to make a fair and independent determination of the question." *State v. Segarra*, 26 N.C. App. at 401, 216 S.E. 2d at 402.

[4]  By his next contention, defendant challenges the trial court's conclusion of law that, after talking with defendant on the morning of 8 October 1976, Detective Crowell had probable cause to obtain a warrant for defendant's arrest on charges of breaking and entering. Defendant argues that the information in Crowell's possession—the investigating officer's report and the initial conversation with defendant—was insufficient to support a conclusion that probable cause existed and therefore, the arrest was illegal; in consequence, he contends, the subject confession made by defendant was the product of an unlawful detention and hence, inadmissible. Specifically, defendant points to inaccuracies in the investigating officers' report relative to the accounts given by two of the eye witnesses—Dennie Price and Karen Futchell—and contends that probable cause cannot be based upon information proven to be unreliable. *See State v. Roberts*, 276 N.C. 98, 171 S.E. 2d 440 (1970).

Upon careful review of the relevant portions of the record, we find that even without the information provided by Price and Futchell, Detective Crowell had information before him sufficiently strong to establish probable cause. Probable cause has been defined by our Supreme Court to be "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *State v. Shore*, 285 N.C. 328, 204 S.E. 2d 682 (1974); *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971). In the case at bar, the information gathered by the investigation—excluding the accounts of Price and Futchell—established that defendant knew the Haskins; that he admitted being in the area of the Haskin's residence at the time of the break-in; that he had called Robbie Johnson and asked if the police were looking for him; and that an automobile registered to defendant was seen "suspiciously" circling the area of the break-in. These facts and circumstances would warrant a prudent man in believing that defendant committed the breaking and entering. *State v. Shore, supra*. Accordingly, this contention is overruled.

[5]  Defendant further contends that the trial court erred in denying the motion to suppress his confession for the reason that such confession was induced by a suggestion of hope from Detective Crowell. This contention is without merit.

The ultimate test of the admissibility of a confession is whether the statement made by the accused was in fact voluntarily and understandingly made. *State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92 (1975); *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968). When the circumstances reveal that the challenged confession was induced by conduct and language of an investigating officer amounting to suggestions of hope or fear, such confession is involuntary in law and incompetent as evidence. *State v. Pruitt, supra; State v. Roberts*, 12 N.C. 259 (1827); *State v. Raines*, 30 N.C. App. 176, 226 S.E. 2d 546 (1976). The decision of the trial court on this matter is reviewable upon appeal. *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968).

In the instant case, the subject confession was made during Detective Crowell's second conversation with defendant—a conversation initiated by defendant. Defendant indicated that he wanted a "deal" and Crowell responded that he was unable to offer defendant any kind of deal. At this point, defendant said, "[w]hat if I tell you about what happened down there last night in Matthews?" Crowell then inquired as to defendant's willingness to testify in court to which defendant replied affirmatively. Only after this exchange did Crowell indicate to defendant that generally "the Court will give some consideration to people if they testify or turn State's evidence, but there is no way I can tell you what a judge is going to give you." On these facts, we are unable to find that defendant's confession was *induced* by any suggestion of hope or fear arising out of Crowell's statements. While we recognize the apparent similarity of these facts to cases reaching a contrary result, *see State v. Pruitt, supra* (cases cited therein), we are persuaded in this case, by the extent of defendant's initiative and eagerness to come forward, that defendant was not induced to confess, but rather sought from the outset to wield his confession as a bargaining tool. In this pursuit defendant was unsuccessful, eliciting only an innocuous acknowledgment from Crowell that courts generally gave some consideration to those who testified.

[6] Defendant finally contends that, assuming his confession was admissible, its admissibility should have been restricted to the *breaking and entering* charge and thus, the trial court erred in admitting the confession on the *burglary* charge. Defendant argues that he did not make a voluntary, knowing and intelligent

waiver of his constitutional rights as to the burglary charge as he was never informed of a potential burglary charge against him. We find no merit in this novel contention. The fact that a statement contains evidence inculpating a defendant in an offense of which he was unaware, in no way invalidates a prior, voluntary waiver of the privilege against self-incrimination.

We conclude that defendant's confession was voluntarily and understandingly made without suggestion of hope or fear. The trial court's denial of defendant's motion to suppress is affirmed.

Accordingly, the judgment appealed from is affirmed.

Chief Judge BROCK and Judge CLARK concur.