STATE OF NORTH CAROLINA v. JERRY WAYNE ALLEN

No. 8718SC1004

(Filed 3 May 1988)

1. Narcotics § 3.1— evidence whispered to reporter—no prejudicial error

There was no prejudicial error during a suppression hearing in a prosecution for narcotics offenses and for being a habitual felon where the court allowed a detective to answer a question as to whether defendant's name appeared on the passenger manifest of a flight only by whispering to the reporter. The detective had already testified that he did not check the manifest until after defendant was arrested and taken into custody; evidence of what the detective learned subsequent to the arrest was outside the scope of the *voir dire*.

2. Arrest and Bail § 3.1— officer's opinion of authority to stop—not admissible

The trial court did not err during a suppression hearing in a prosecution for narcotics offenses by sustaining the State's objection to questions concerning a detective's opinion of his authority to ask defendant to halt. The detective's opinion of the basis of authority for his request was not relevant, given the objective standard used to determine authority for a brief investigatory stop; the question amounted to little more than a request for a legal conclusion as to reasonable suspicion; and there was no prejudice from the court's method of preserving the answer for the record.

3. Narcotics § 3.1; Criminal Law § 88— suppression hearing—cross-examination of arresting detective—answers originally excluded—ultimately considered—no prejudice

There was no prejudice in an action for narcotics offenses where the trial court reversed its earlier rulings on a *voir dire* on defendant's suppression motion and considered "for what they are worth" a detective's whispered answers. The answers could properly be excluded as irrelevant and outside the

scope of the *voir dire*, defendant failed to show that the answers influenced the court's findings and conclusions, and the rules of evidence are relaxed in hearings before a judge without a jury on pretrial motions.

**4. Criminal Law § 99.2— court's remarks and questions during trial—no error**

There was no reversible error in the conduct of the trial judge in a *voir dire* suppression hearing in a prosecution for narcotics offenses where the judge made a preliminary statement that "the burden of showing admissibility is on us, uh, on the State, I mean," and defendant also contended that the court assumed the role of the prosecutor by explaining the State's objections and by suggesting or raising objections to defense counsel's questions. The trial court has authority to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. N.C.G.S. § 8C-1, Rule 611(a).

**5. Narcotics § 3.2— airport stop—fleeing defendant—evidence of narcotics admissible**

The trial court did not err by denying defendant's motion to suppress evidence of narcotics possession where two detectives, who were observing passengers deplane from a flight from Newark, New Jersey, observed defendant disembarking from the flight; the flight originated from a source city for heroin; defendant was the last passenger to disembark; defendant nervously scanned the crowd, made eye contact with one of the detectives, then turned abruptly and walked quickly down the concourse to the exit; defendant passed the luggage pickup area without stopping; when a detective shouted "halt, police," defendant pushed his way between an elderly woman and the wall, turned and made eye contact with the detective, and bolted down an escalator, knocking three people out of his way; at the foot of the escalator, defendant broke into an "all-out run" through the airport exit doors; the detective and an agent did not actually approach and question defendant until they found him walking in a parking area at the North end of a pedestrian tunnel; defendant then voluntarily stopped; defendant had no airline ticket but presented a driver's license; the detective recognized the name as being the name of a narcotics courier which had previously been supplied by an informant; defendant denied that he had any narcotics on him and asked if the officers wished to search him; the detective began to search defendant, at which time defendant grabbed the detective's wrists and pushed the detective backwards violently; defendant was placed under arrest for assault on a law enforcement officer; and a construction foreman subsequently approached the officers with packets of a white powder, later found to be cocaine, which he had seen defendant drop.

**6. Searches and Seizures § 2— discarded narcotics seized by private party during chase—no improper seizure**

Narcotics which were dropped by a defendant as he fled from officers and retrieved by a construction foreman were not improperly seized where the court could properly conclude that defendant voluntarily discarded and abandoned the evidence along with any expectation of privacy in that evidence; moreover, the Fourth Amendment only proscribes unreasonable searches and seizures by government action.

APPEAL by defendant from *Hairston (Peter W.), Judge.* Order entered 12 June 1987 in Superior Court, GUILFORD County. Heard in the Court of Appeals 29 March 1988.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Teresa L. White, for the State.*

*McNairy, Clifford and Clendenin, by Locke T. Clifford, for defendant-appellant.*

PARKER, Judge.

On appeal, defendant contends that he was denied his due process rights and his right to effectively present his case by the trial court in the *voir dire* and that the trial court erred in denying defendant's motion to suppress because the evidence obtained by Detective West and Agent Porter on 3 September 1986 was the fruit of an illegal seizure not based on reasonable suspicion. We find these contentions to be without merit and affirm the order of the trial court.

Defendant was charged by information with the offense of habitual felon following his arrest on 3 September 1986 for the felonies of possession of heroin and possession of heroin with intent to sell and deliver. On 21 May 1987, defendant filed a motion to suppress evidence and statements made by him. A hearing on the motion was held on 9 June 1987.

At the close of all the evidence, the trial court made the following findings of fact, which are binding on appeal because not excepted to by defendant:

1) That Detectives Grady Bryant and Tim Parker, between August 4, 1986 and August 29, 1986 obtained information in reference to Jerry Wayne Allen from an informant;

2) That Detective Parker had obtained information from this informant on prior occasions and that Detective Parker had verified the information by corroborating details given by the informant with other law enforcement agents. That the information given by the informant in the past had lead [sic] to the arrest and conviction of one other person, Betty Quick;

3) That Detective Parker considered informant to be reliable based upon the information he had previously received and was able to verify;

4) That the information was that Jerry W. Allen traveled to New York by airplane for purpose [sic] of bringing controlled substances (heroin and cocaine) back to the High Point area, and that he used both the Raleigh/Durham Airport and the Regional Airport;

5) That on at least two occasions, August 4, 1986 and subsequent to August 29, 1986, but before September 3, 1986, Detectives Bryant and Parker relayed information provided by the informant to Detective West of the Guilford County Sheriff's Department who was then assigned to the Narcotics Interdiction at Regional Airport;

6) That Deputy West received this information, obtained a photograph of Jerry Wayne Allen and kept the information and photograph for future reference;

7) That on September 3, 1986, Detective West and Agent Porter were observing the passengers of People [sic] Express Flight 352 deplane at Gate 21 of the Regional Airport. That Flight 352 originated from Newark, and served New York City, which West knew to be a "source city" for heroin;

8) That Jerry W. Allen deplaned from Flight 352, and was the last person to deplane;

9) That Deputy West recognized Mr. Allen's face as being familar [sic] but did not recognize him as Jerry Wayne Allen;

10) That upon deplaning, Jerry W. Allen began to scan the area by looking at the various persons nearby;

11) That Jerry W. Allen made eye contact with Agent Porter and Deputy West, who were standing side by side and then, quickly looked down. That he then re-established eye contact, looked away again and began to walk quickly down the concourse;

12) That Deputy West has been trained in airport interdiction procedures by representatives of the State Bureau of

Investigation and the Drug Enforcement Agency and had more than two years experience as an interdiction officer at the Regional Airport. That during those two years Deputy West has participated in more than twenty-five arrests for narcotics violations;

13) That based upon his training and experience, Deputy West characterized the demeanor of Jerry W. Allen as being very nervous and noted that he was walking very fast and pushed between an older lady in the concourse and the wall;

14) That Jerry W. Allen was wearing casual clothes, a white shirt with pink stripes, a pink belt and shoes. That he was carrying a black leather jacket, a paper bag and no other baggage;

15) That after Jerry W. Allen and Deputy West made eye contact, Deputy West stated to Agent Porter that Mr. Allen appeared familar [sic] to him, and that Agent Porter and Deputy West then began to follow Jerry W. Allen and continue observing him;

16) That Agent Porter and Deputy West followed Jerry Wayne Allen at a very brisk pace to the escalator area, at which time Jerry Wayne Allen looked back, made eye contact again and ran to the down elevator [sic];

17) That Jerry W. Allen ran down the escalator, striking and knocking three individuals out of his way as he ran;

18) That Jerry W. Allen reached the bottom of the escalator, turned to the right and ran in an all-out run toward the exterior doors which lead to the lower parking area;

19) That Deputy West and Agent Porter continued to follow Jerry W. Allen by running after him;

20) That Jerry W. Allen passed the luggage claim area without stopping;

21) That Jerry W. Allen exited the exterior doors of the lower level of the airport and continued to run across the parking lot;

22) That as Jerry W. Allen ran, he discarded the paper bag he was carrying, which contained magazines, and the leather jacket he was carrying;

23) That Deputy West followed at a distance and yelled, "Halt, police;"

24) That Jerry W. Allen did not respond by halting or otherwise;

25) That Deputy West continued to follow Jerry W. Allen and observed him run into a construction area and jump off the top of a wall which was approximately six feet in height;

26) That as he jumped, Jerry W. Allen used his hand to assist himself and place [sic] his hand on the top of the wall, catching his hand on a reinforcing bar;

27) That Jerry W. Allen continued to run through the tunnel he had jumped down and under the road and into another parking area;

28) That Deputy West did not follow Jerry W. Allen, through the tunnel, but went over the top of the road, losing sight of Jerry W. Allen for some fifteen seconds;

29) That after crossing the road, Deputy West observed Jerry W. Allen walking in the parking area;

30) That Deputy West approached Jerry W. Allen, who voluntarily stopped and spoke to Deputy West;

31) That Deputy West identified himself as a law enforcement officer and in response to West's question, Jerry W. Allen stated he had no airline ticket but presented a driver's license in the name of Jerry W. Allen;

32) That Deputy West then recognized the name and recalled the information he had previously been provided by Detectives Bryant and Parker;

33) That Deputy West asked Jerry W. Allen if he had any narcotics on him and Jerry W. Allen replied, "No, do you want to search me?"

34) That Deputy West began to search Jerry W. Allen, at which time Jerry Wayne Allen grabbed his wrists and pushed Deputy West backwards violently, stating, at the same time, "Wait a minute, don't plant anything on me;"

35) That West then placed Jerry W. Allen under arrest for assault on a law enforcement officer;

36) That prior to the consent search, Jerry W. Allen was not detained in any way;

37) That prior to the consent to search neither Deputy West nor Agent Porter had touched Jerry W. Allen;

38) That Agent Porter and Deputy Allen [sic] never displayed a firearm or any other weapon;

39) That Deputy West and Agent Porter did not make any effort to detain Jerry W. Allen other than shouting, "Halt, police," and later approaching him on a consensual basis;

40) That subsequent to the arrest for assault, Donald Powell, Senior, a civilian construction foreman on the site, approached the officers with thirty (30) packets of white powder which he had seen Jerry W. Allen drop at the bottom of the wall as he jumped from the wall, and which he retrieved and turned over to Deputy West;

41) That subsequent to the arrest, Donald Powell, Senior, located ten (10) more packets of white powder and scraps of brown wrapping paper on top of wall [sic], near the reinforcing bar and turned them over to Deputy West;

42) That subsequent to the arrest Donald Powell, Senior, located more packets containing white powder wrapped in brown paper in the bushes, near the scene of Jerry W. Allen's arrest, brought them to the attention of Deputy West who photographed and collected one-hundred-three (103) packets from the bushes;

43) That the packets with white powder were field tested and Jerry W. Allen was charged with Possession of Heroin;

44) That Jerry W. Allen was advised of his constitutional rights between 3:20 p.m. and 3:28 P.M., executed a standard advice of rights form, and stated that the heroin was for Rudy Steele. Thereafter, he denied possession of the heroin and that it was for Rudy Steele;

45) That subsequent, and incidental to his arrest, Deputy West and Agent Porter seized a black leather jacket which was dropped as Jerry W. Allen ran across the parking lot, six papers with writing on them from the wallet of Jerry W. Allen, two papers with writing on them from the person of Jerry W. Allen;

46) That on September 10, 1986, a search warrant, proper in form and based upon probable cause, was issued by the Honorable Mary M. Pope, Superior Court Judge Presiding, ordering the subsequent seizure of the black leather jacket which had been placed in the personal property of Jerry W. Allen in the Guilford County Jail.

Based on the foregoing findings of fact, the court concluded as a matter of law that Detective West and Agent Porter had an articulable reasonable suspicion based on the "Drug Courier Profile" which justified a brief detention of defendant after he deplaned; that the officers had the right to pursue defendant in order to observe him and to attempt to approach him; that Detective West's conduct in shouting " 'Halt, police' " did not amount to a seizure, and even if it was a seizure, it was a constitutionally permissible brief stop based upon an articulable reasonable suspicion; that Detective West's conduct in approaching defendant and asking for his airline ticket and identification was consensual, constituted a constitutionally permissible investigative stop based on an articulable reasonable suspicion, and was not a seizure within the meaning of the fourth amendment; that defendant consented to a search, and Detective West properly attempted to search defendant; that defendant assaulted Detective West, giving the officer probable cause to arrest defendant and to conduct a search incident to that arrest; that the 143 packets of heroin, scraps of paper, and fibers were discarded or otherwise not in defendant's possession or in a place where defendant had a reasonable expectation of privacy and were collected by a private citizen and lawfully turned over to Detective West; that the items were not discarded as the result of illegal police activity; that defendant's jacket was seized incident to arrest, subsequently returned to defendant, and later seized pursuant to a valid search warrant; that any statements made by defendant were made while he was in lawful custody based on probable cause that he had assaulted

an officer and was in possession of controlled substances; and that defendant was properly advised of his constitutional rights.

Defendant pled guilty to the charges against him, reserving the right to appeal the court's denial of his motion to suppress.

### I.

Defendant first argues that he was denied a full and fair hearing in the *voir dire* on 9 June 1987. Specifically, defendant claims that the trial court erred in not allowing defense counsel to effectively cross-examine the State's witnesses, in not allowing defense counsel to hear the witnesses' answers to certain questions, in interrupting defense counsel during cross-examination and while defense counsel was addressing the court, and in "confusing the roles of the court and the prosecutor."

At the outset, we note that the initial question presented in defendant's brief combines four separate assignments of error and directs this Court to fifty-three exceptions to the proceedings of the trial court. While we have reviewed each of these exceptions, we will confine our discussion here to those exceptions that are specifically discussed in the brief.

Although cross-examination of an adverse witness is a matter of right, the scope of cross-examination is subject to appropriate control by the trial court. *State v. Hosey,* 318 N.C. 330, 334, 348 S.E. 2d 805, 808 (1986). General Statute 8C-1, Rule 611(a), provides that the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Further, the rule is well established that in a hearing before a judge on a preliminary motion, the ordinary rules as to the competency of evidence that apply in a trial before a jury are relaxed because the judge, being knowledgeable in the law, is able to eliminate immaterial and incompetent testimony and to consider only that evidence properly tending to prove the facts to be found. *State v. Thomas,* 34 N.C. App. 534, 538, 239 S.E. 2d 281, 284 (1977), *disc. rev. denied,* 294 N.C. 444, 241 S.E. 2d 846 (1978). Therefore, in a *voir dire* on a motion to suppress, there is a presumption that the trial judge disregarded incompetent evi-

State v. Allen

dence. *State v. Fox,* 58 N.C. App. 692, 694, 294 S.E. 2d 410, 412 (1982), *aff'd per curiam,* 307 N.C. 460, 298 S.E. 2d 388 (1983).

[1]    The first group of exceptions addressed in defendant's brief involves the trial court's refusal to permit counsel for the defense to ask Detective West whether defendant's name appeared on the passenger manifest for the People's Express Flight 352 from Newark on 3 September 1986. The State objected to the question because it exceeded the scope of the *voir dire.* Detective West had already stated that he did not check the manifest until after defendant was arrested and taken into custody. On the insistence of counsel for defendant, Detective West was made to answer the question for the record. So that the defense could not utilize the suppression hearing for discovery purposes, the witness was asked to whisper his answer to the court reporter out of the hearing of the judge and defense counsel.

We agree that the question was outside the scope of the *voir dire.* The basis of defendant's motion to suppress was that defendant's stop at the airport on 3 September 1986 was not based on an articulable reasonable suspicion. The requisite reasonable and articulable suspicion that the person was engaged in criminal activity must be based on facts known to the officer *at the time of the stop. State v. Thompson,* 296 N.C. 703, 706, 252 S.E. 2d 776, 779, *cert. denied,* 444 U.S. 907, 100 S.Ct. 220, 62 L. Ed. 2d 143 (1979); *State v. Sugg,* 61 N.C. App. 106, 109, 300 S.E. 2d 248, 250, *disc. rev. denied,* 308 N.C. 390, 302 S.E. 2d 257 (1983). Although the trial judge did not permit defense counsel to hear the witness's answer, there was no resulting prejudicial error. Evidence of what Detective West learned subsequent to defendant's arrest when he first looked at the manifest was irrelevant to and outside the scope of the *voir dire.*

[2]    Defendant's next group of exceptions involves defense counsel's questions to Detective West concerning the officer's authority and purpose in telling defendant to "halt." The court once sustained the State's objection to the question. When counsel for the defense asked the question a second time, defense counsel was informed that the court had already ruled on the issue and was warned not to repeat questions that had been ruled on. The court stated that this would be especially important when trial began and a jury was present in the courtroom. Again, at

defense counsel's insistence, the witness's answers were noted in the record outside the hearing of both the trial judge and counsel for the defense.

We again find that the trial court's ruling excluding Detective West's opinion or belief as to his authority or purpose in asking defendant to halt was correct. A brief investigative stop of an individual must be based on specific and articulable facts as well as inferences from those facts, viewing the circumstances surrounding the seizure through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training. *State v. Thompson*, 296 N.C. at 706, 252 S.E. 2d at 779; *State v. Harrell*, 67 N.C. App. 57, 61, 312 S.E. 2d 230, 234 (1984). Given this objective standard, Detective West's opinion as to the basis or authority for his request that defendant halt is not relevant to the court's inquiry and could be properly excluded. We also note that in North Carolina, an expert witness is not permitted to testify that a particular legal standard has or has not been met. *See State v. Smith*, 315 N.C. 76, 100, 337 S.E. 2d 833, 849 (1985). To ask Detective West his opinion as to whether he had authority to seize or stop defendant amounts to little more than a request for a legal conclusion as to reasonable suspicion. *See State v. Fox, supra.* The court properly sustained the State's objection, and we find no prejudice to defendant in the method used by the court in preserving the witness's answer for the record.

[3] Defendant also asserts as error the court's decision at the close of all evidence to reverse its earlier rulings and to consider, "for whatever they were worth," Detective West's whispered answers to cross-examination that had been previously excluded. Considering that the answers could be properly excluded as irrelevant and outside the scope of *voir dire*; that defendant has failed to show that the answers to the questions influenced the trial court's findings and conclusions, *see State v. Rogers*, 43 N.C. App. 475, 259 S.E. 2d 572 (1979); and that the rules of evidence are relaxed in hearings before a judge without a jury on pretrial motions, *see State v. Thomas, supra*, we conclude that there was no reversible error in this ruling by the court below.

[4] Finally, defendant contends that "at various points in the *voir dire* proceeding, the court appeared to take over the role as prosecutor." Specifically, defendant points to the court's prelimi-

nary statement, "The burden of showing admissibility is on us, uh, on the State, I mean." Defendant also contends that the court assumed the role of prosecutor by explaining the State's objections and by suggesting or raising objections to defense counsel's questions. There is no merit to these contentions.

As noted earlier, the trial court has authority to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence pursuant to G.S. 8C-1, Rule 611(a). Moreover, a trial judge is not precluded from questioning witnesses during a *voir dire* on a preliminary motion. *State v. Thomas, supra; State v. Berry,* 24 N.C. App. 312, 210 S.E. 2d 494 (1974). Therefore, we conclude that there was no reversible error in the conduct of the trial judge.

II.

[5] The second issue raised by defendant's appeal is whether the trial court erred in denying defendant's motion to suppress because the evidence was seized by Detective West and Agent Porter as the result of the officers' illegal conduct in chasing defendant and in ordering him to halt. There is no merit to this contention.

The facts of the present case are not unlike those of many airport interdiction cases previously considered by the United States Supreme Court and by this Court. *See, e.g., Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed. 2d 165 (1984); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed. 2d 229 (1983); *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed. 2d 890 (1980); *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed. 2d 497 (1980); *State v. Thomas,* 81 N.C. App. 200, 343 S.E. 2d 588, *disc. rev. denied,* 318 N.C. 287, 347 S.E. 2d 469 (1986); *State v. Perkerol,* 77 N.C. App. 292, 335 S.E. 2d 60 (1985), *disc. rev. denied,* 315 N.C. 595, 341 S.E. 2d 36 (1986); *State v. Sugg, supra; State v. Casey,* 59 N.C. App. 99, 296 S.E. 2d 473 (1982); *State v. Grimmett,* 54 N.C. App. 494, 284 S.E. 2d 144 (1981), *disc. rev. denied and appeal dismissed,* 305 N.C. 304, 290 S.E. 2d 706 (1982); *State v. Cooke,* 54 N.C. App. 33, 282 S.E. 2d 800 (1981), *aff'd,* 306 N.C. 132, 291 S.E. 2d 618 (1982). Out of these cases have emerged the following levels of analysis:

"1. Communications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment;

2. Brief seizures must be supported by reasonable suspicion; and

3. Full-scale arrests must be supported by probable cause."

*State v. Thomas,* 81 N.C. App. at 205, 343 S.E. 2d at 591 (quoting *State v. Perkerol,* 77 N.C. App. at 298, 335 S.E. 2d at 64). *See also State v. Sugg, supra.* The facts in this case involve an ongoing and unfolding situation; therefore, the facts must be analyzed in light of the extent of the intrusion caused by the officers' actions and the facts and circumstances known by the officers to warrant the intrusion as the situation developed.

" 'There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets' "; however, " 'the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.' " *State v. Grimmett,* 54 N.C. App. at 498, 284 S.E. 2d at 148 (quoting *Terry v. Ohio,* 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed. 2d 889, 913 (1968) (White, J., concurring)). A defendant's fourth amendment rights are not implicated where police officers approach him and ask to see his airline ticket and other identification. *See State v. Thomas,* 81 N.C. App. 200, 343 S.E. 2d 588; *State v. Grimmett, supra; United States v. Mendenhall, supra* (opinion of Stewart, J.). The fact that an officer identifies himself as a police officer does not, without more, convert the encounter into a seizure requiring some level of objective justification. *Florida v. Royer,* 460 U.S. at 497, 103 S.Ct. at 1324, 75 L.Ed. 2d at 236. *See also United States v. Mendenhall, supra* (opinion of Stewart, J.). On the other hand, a person is seized within the meaning of the fourth amendment, " 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave.' " *State v. White,* 77 N.C. App. 45, 49, 334 S.E. 2d 786, 790, *cert. denied,* 315 N.C. 189, 337 S.E. 2d 864 (1985) (quoting *United States v. Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed. 2d at 509 (opinion of Stewart, J.)). *See also State v. Grimmett, supra.*

Applying these general principles to the facts of the case before us, we agree with the trial court that the actions of Detective West and Agent Porter in following and observing defendant as he hurried through the terminal and Detective West's conduct in shouting, "Halt, police," did not constitute a seizure. West's attempt to make defendant stop for questioning and his identification of himself as a police officer did not convert the situation into a "seizure" wherein a reasonable person would believe he or she was not free to leave. Defendant did not stop, and, in fact, was not in direct contact with the officers until they approached him at the north end of the tunnel.

Even if we were to accept defendant's argument that Detective West's words did amount to a "stop" or "seizure" of defendant, at that point, the officer did have a reasonable and articulable suspicion that defendant was engaged in criminal activity. The trial court found as fact that when Detective West first saw defendant deplane, he recognized his face, although he could not specifically identify him. The court also found that West had received information concerning defendant's involvement in drug trafficking at the Regional Airport and had obtained a photograph of defendant in reference to this information. The court found that Detective West was trained in airport interdiction procedures and had participated in numerous drug-related arrests. The court also found as fact that West and Porter were aware that defendant's flight originated from a "source city," or a city which is a major supply center for heroin; that defendant was the last passenger to disembark from the plane; that defendant nervously scanned the crowd and made direct eye contact with Detective West; that defendant then turned abruptly and walked quickly down the concourse toward the exit; and that defendant passed the luggage pick-up area without stopping. The court found that at the time when Detective West shouted, "Halt, police," defendant had pushed his way between an elderly woman and the wall; turned and again made eye contact with Detective West; bolted down an escalator, knocking three people out of his way; and, at the foot of the escalator, had broken into an "all-out run" through the airport exit doors. Based on these objective and articulable facts and circumstances, we must conclude that Detective West had, at the time he shouted, "Halt, police," a reasonable and articulable suspicion that defendant was engaged in criminal

activity justifying a temporary investigative stop of defendant for questioning.

Moreover, as the trial court found, Detective West and Agent Porter did not actually approach and question defendant until they found him walking in a parking area at the north end of the pedestrian tunnel. At that point, Detective West approached defendant, who voluntarily stopped and spoke with the officer. West identified himself and asked defendant for an airline ticket or other identification. This form of non-coercive communication between a police officer and a citizen has been held not to implicate any fourth amendment rights. *See State v. Thomas*, 81 N.C. App. 200, 343 S.E. 2d 588; *State v. Grimmett, supra. See also Florida v. Rodriguez, supra; United States v. Mendenhall, supra* (opinion of Stewart, J.). Defendant was not actually "seized" in any sense of the word until after his assault on Detective West, when defendant was formally arrested. Because Detective West and Agent Porter's conduct did not violate defendant's fourth amendment rights, the trial court properly denied defendant's motion to suppress evidence seized and statements he made subsequent to his arrest.

[6] Finally, because the officers' actions were constitutionally permissible, there is no merit to defendant's contention that the evidence he disposed of in the course of his flight was improperly seized. The trial court correctly concluded that the evidence was discarded by defendant or was otherwise in a place where defendant had no reasonable expectation of privacy. The evidence was dropped in a public place, and defendant continued to flee the area. The court could, therefore, properly conclude that defendant voluntarily discarded and abandoned the evidence along with any expectation of privacy in that evidence. *See State v. Williams*, 71 N.C. App. 136, 137-38, 321 S.E. 2d 561, 562-63 (1984).

Moreover, the United States Supreme Court has consistently construed fourth amendment rights against unreasonable searches and seizures as proscribing only governmental action, not action by a private citizen, such as the tunnel construction foreman in this case, who was not acting as an agent of the government or with government participation or knowledge. *See United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed. 2d 85 (1984); *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048

(1921). *Accord, State v. Keadle,* 51 N.C. App. 660, 277 S.E. 2d 456 (1981); *State v. Morris,* 41 N.C. App. 164, 254 S.E. 2d 241, *appeal dismissed and cert. denied,* 297 N.C. 616, 267 S.E. 2d 657 (1979).

Therefore, for the foregoing reasons, the order of the trial court denying defendant's motion to suppress is

Affirmed.

Judges WELLS and ORR concur.