STATE v. POPE

[120 N.C. App. 462 (1995)]

———

STATE OF NORTH CAROLINA v. ROBERT LEE POPE, DEFENDANT

No. COA94-968

(Filed 17 October 1995)

**Searches and Seizures § 62 (NCI4th)— defendant approached by officers at airport—consensual search—no unconstitutional search and seizure**

The trial court properly denied defendant's motion to suppress evidence obtained during an allegedly unconstitutional search and seizure which preceded defendant's arrest at an airport, since defendant's Fourth Amendment rights were not implicated when a detective approached him and asked to see his ticket and identification; defendant consented to accompany officers and to allow the search in the airport authority room; the entire consensual nature of the encounter between defendant and the officers was strengthened by the fact that the officers were not in uniform, did not display weapons, requested, without demand, that defendant cooperate with them, and returned defendant's ticket and identification prior to asking him to accompany them to the airport authority room; and defendant did not withdraw his consent at any time.

**Am Jur 2d, Searches and Seizures §§ 83 et seq.**

STATE v. POPE

[120 N.C. App. 462 (1995)]

Appeal by defendant from judgment entered 31 May 1994 by Judge Orlando Hudson in Wake County Superior Court. Heard in the Court of Appeals 28 August 1995.

On 19 April 1994 a grand jury indicted defendant on two counts of trafficking in cocaine. On 6 May 1994 he filed a motion to suppress evidence obtained during the allegedly unconstitutional search and seizure that preceded his arrest. The trial court denied the motion. Thereafter, defendant entered into a plea arrangement, pursuant to which the trial court sentenced him to fourteen years imprisonment.

Both parties presented evidence at the suppression hearing. Wake County Sheriff's Department Detective J. Graves and State Bureau of Investigation Agent W. E. Weiss testified that they received information from a confidential source that an individual named Robert Pope was traveling from New York City to Raleigh-Durham International Airport. Pope, who had paid cash for his ticket shortly before departure, would be arriving on an American Airlines' flight with one checked bag.

The officers arrived to watch passengers deplane from Pope's scheduled flight. Detective Graves testified that as defendant deplaned, defendant made eye contact with him, immediately turned ninety degrees, and headed against the flow of traffic. As Detective Graves watched him, defendant looked over his shoulder and picked up a pay phone. Although he held the receiver, Detective Graves noticed that defendant did not move his mouth or appear to talk. Detective Graves testified that drug couriers frequently do this "because they want to see who's watching them and following them."

After all passengers had deplaned, the officers, not realizing that the man on the pay phone was Robert Pope, proceeded to the baggage claim area to locate Robert Pope's bag. Detective Graves noticed defendant exiting the airport with a carry-on bag, followed him, and identified himself. Defendant agreed to speak to Detective Graves and, upon request, produced his airline ticket and identification, at which time Detective Graves discovered he was Robert Pope. Detective Graves returned his ticket and identification and asked him to accompany him to a more private area. Defendant agreed and carried his bag to the airport authority room.

Once inside, Detective Graves explained that he and Agent Weiss were looking for hard drugs, weapons, and large amounts of money. Defendant denied having any, but produced approximately $200.00 in

cash from his pocket. When asked if they could search his bag, defendant replied, "Sure, go ahead." Inside Agent Weiss found dirty clothes, but noticed an absence of toiletries and personal items. Agent Weiss testified that couriers typically toss dirty clothes into a bag so they do not appear to be carrying an empty bag.

At Detective Grave's request, defendant consented to a pat down search and raised his arms to facilitate the search. As he conducted the pat down, Detective Graves noticed a bulge "which felt to be a plastic bag." Acting on the knowledge that cocaine is packaged in plastic bags over ninety percent of the time, Detective Graves reached in and pulled out the bag. When they discovered that the bag contained a white powdery substance, the officers arrested defendant.

Defendant testified that he was unfamiliar with the airport and did not know where to go once he deplaned. After deplaning he proceeded to the pay phone to make hotel reservations. He then left the airport to look for a taxi-cab, but realized he had exited at the wrong level to do so. As he entered the airport, Detective Graves stopped him and asked to see his ticket and identification. They were not returned. Detective Graves then asked him to accompany him to another room. With Detective Graves lightly touching him, they proceeded to the airport authority room. Agent Weiss picked up defendant's bag, squeezed it, and, once inside the room, opened it. Only then did the officers seek his consent to search the bag. Defendant replied that since Agent Weiss had already opened it he might as well go ahead. Afterwards, Detective Graves searched defendant without his consent and found the cocaine.

The trial court found that "none of the constitutional or the statutory rights of the defendant were violated in any manner during the sequence of events" and denied defendant's motion. It concluded that "once the defendant produced an airline ticket with the name Robert Pope, that in conjunction with the earlier activity . . ., reasonable suspicion existed for the officers to make a limited detainment." In addition, "[o]nce the officer recognized immediately the substance in the plastic bag as being a, or in his opinion being a plastic bag, containing the controlled substance cocaine, that probable cause existed to arrest the defendant . . . [and] make a search incident to such arrest."

Defendant appeals.

STATE v. POPE

[120 N.C. App. 462 (1995)]

*Attorney General Michael F. Easley, by Associate Attorney General William B. Crumpler, for the State.*

*Law Offices of George W. Hughes, by George W. Hughes and John F. Oates, Jr., for defendant appellant.*

ARNOLD, Chief Judge.

Defendant contends that the trial court erred in denying his motion to suppress. He argues that the officers did not have reasonable and articulable suspicion to make the investigative stop, and that the stop implicated his fourth amendment rights. He also argues that the trial court erred in finding that he consented to the search of his person, "as a mere submission to authority does not constitute a valid consent to search."

Three levels of analysis apply to airport interdiction encounters. *State v. Allen*, 90 N.C. App. 15, 367 S.E.2d 684 (1988). They are:

"1. Communications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment;

2. Brief seizures must be supported by reasonable suspicion; and

3. Full-scale arrests must be supported by probable cause."

*State v. Thomas*, 81 N.C. App. 200, 205, 343 S.E.2d 588, 591, *disc. review denied*, 318 N.C. 287, 347 S.E.2d 469 (1986) (quoting *State v. Perkerol*, 77 N.C. App. 292, 298, 335 S.E.2d 60, 64 (1985), *disc. review denied*, 315 N.C. 595, 341 S.E.2d 36 (1986)). Fourth amendment rights are not implicated when an individual is merely approached by law enforcement officers who request to see an airline ticket and identification. *Allen*, 90 N.C. App. 15, 367 S.E.2d 684.

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.

*Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236 (1983) (citations omitted). "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatsoever for invoking constitutional safeguards." *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509 (1980).

Under the authority cited above, defendant's fourth amendment rights were not implicated when Detective Graves approached him and asked to see his ticket and identification. Moreover, assuming, *arguendo*, that the officers lacked reasonable suspicion to detain defendant further, defendant's consent to accompany the officers and to allow the search in the airport authority room justifies the search. *See State v. Casey*, 59 N.C. App. 99, 296 S.E.2d 473 (1982) (stating that subsequent search was not tainted by an unlawful seizure where defendant consented to accompany officers to airport room); *State v. Grimmett*, 54 N.C. App. 494, 284 S.E.2d 144 (1981), *disc. review denied and appeal dismissed*, 305 N.C. 304, 290 S.E.2d 706 (1982) (concluding that officers lacked reasonable suspicion, but that search was valid based on consent).

The trial court found that the entire encounter between defendant and the officers was consensual, and that defendant did not withdraw his consent at any time. The officers' testimony fully supports this finding. *See Grimmett*, 54 N.C. App. 494, 284 S.E.2d 144. The consensual nature of the encounter is strengthened by the fact that the officers were not in uniform, did not display weapons, and requested, without demand, that defendant cooperate with them. *See Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497. In addition, the fact that the officers returned defendant's ticket and identification prior to asking him to accompany them to the airport authority room supports the trial court's finding. *See Royer*, 460 U.S. 491, 75 L. Ed. 2d 229 (indicating that retention of ticket and identification evaporates the consensual nature of the encounter).

For these reasons, the trial court's denial of defendant's motion to suppress is

Affirmed.

Judges Johnson and Martin, Mark D., concur.